IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUDIVINA G. RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-04-1685 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social | § | |
| Security, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Pending before the court[1] are Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment. The court has considered the motions, all relevant filings, the administrative record, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's Motion for Summary Judgment (Docket Entry No. 13) and **DENIES** Plaintiff's Motion for Summary Judgment (Docket Entry No. 11).

I.  **Case Background**

A.  **Procedural History**

In this action filed pursuant to 42 U.S.C. § 405(g), Ludivina G. Rodriguez ("Plaintiff") seeks judicial review of a decision by the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Docket Entry No. 15.

disability and disability insurance benefits under Title II of the Social Security Act ("the Act").  Plaintiff filed her application on April 18, 2002, and cited an inability to work beginning April 15, 2001, due to back pain and depression.[2]  Following denials of her application at the initial and reconsideration levels,[3] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration ("Administration").[4]

The Administration granted Plaintiff's request, and ALJ Larry Marcy conducted a hearing in Houston, Texas, on November 25, 2003.[5]  After reviewing Plaintiff's medical record and listening to testimony presented at the hearing, the ALJ issued an unfavorable decision on December 4, 2003.[6]  The ALJ found Plaintiff not disabled at any time during the period covered by her application because she could still perform certain light, unskilled occupations that exist in significant numbers in the national economy.[7]  On March 19, 2004, the Appeals Council denied Plaintiff's request for review, finalizing the ALJ's decision as the decision of the Commissioner.[8]

---

[2]     Administrative Transcript ("Tr.") 15.

[3]     Tr. 22-40.

[4]     Tr. 20-21.

[5]     Tr. 41-51.

[6]     Tr. 16-19.

[7]     Tr. 17-19.

[8]     Tr. 4-7.

Having exhausted her administrative remedies,[9] Plaintiff brought this timely civil action for review of the Commissioner's decision, in accordance with 42 U.S.C. § 405(g).[10]

## B. Factual History

### 1. Plaintiff's Age, Education, and Work Experience

Plaintiff was born on August 31, 1954, and is currently fifty years of age, but was forty-nine the date of the ALJ hearing.[11] She has a fifth grade education procured in Mexico and never obtained a general equivalency diploma ("G.E.D.").[12] Plaintiff appears to lack any special job training, as her jobs took little time to learn,[13] and the vocational expert classified them as unskilled.[14] Her previous work experience includes employment as an inspector/packer for Seaworks Plastics from 1981 to 1990, where she inspected and packed bottles.[15] She next worked at ABS Housekeeping for five months in late 1993.[16] Plaintiff then worked as a paper feeder for

---

[9]    See Harper v. Bowen, 813 F.2d 737, 739 (5th Cir. 1987)(summarizing the administrative steps a disability claimant must take in order to exhaust possible administrative remedies).

[10]    Plaintiff's Original Complaint, Docket Entry No. 2.

[11]    Tr. 284.

[12]    Tr. 284-85.

[13]    Tr. 285-89.  All her jobs took one or two days to learn, except the job as a meat-packer, which took three or four days.

[14]    Tr. 296.

[15]    Tr. 89, 286.

[16]    Tr. 89, 287.

the Houston Chronicle from December 1993 to May 1994.[17]  After that,
she worked as an inspector/packer for International Meat from May
1994 to May 1995.[18]  Lastly, Plaintiff worked as a paper feeder for
Tryco at the Houston Chronicle plant from May 1995 to April 2001.[19]

### 2.   Plaintiff's Medical and Questionnaire Evidence

Plaintiff had a lumbar laminectomy on vertebrae L5 in 1990 to
alleviate chronic back pain.[20]  Though the surgery was successful,
Plaintiff re-injured her back in 1992 when she attempted to lift a
seventy-five pound wood pallet at her job.[21]  Plaintiff continued to
work through the pain for the years between 1992 and 2001.
Plaintiff described the pain as a sharp pain over the lumbar region
of the spine, and occasional shock-like pain radiating to her hips.[22]
This pain affected Plaintiff on a daily basis.[23]  To alleviate the
pain in her back and hips, Plaintiff took Naproxen, Motrin,
Neurontin, Acetaminophen with Codeine, and Cyclobenzaprine
Hydrochloride.[24]  She stated that the Naproxen caused insomnia as a

---

[17]   Tr. 89, 287-88.

[18]   Tr. 89, 288.

[19]   Tr. 89, 288.

[20]   Tr. 105.

[21]   Tr. 215.  Athough the record refers to the back injury as work-
related, it is unclear at which job Plaintiff was injured because the record does
not indicate employment in 1992.

[22]   Tr. 215.

[23]   Tr. 98, 100.

[24]   Tr. 99, 101, 121, 127.

side effect.[25]  In June 2002, Frazana Sahi, M.D., ("Dr. Sahi") found that as a result of this back pain, Plaintiff might "have difficulty sitting and standing for moderate periods of time, walking short distances and minimal lifting."[26]  Further, Dr. Sahi stated that Plaintiff's history and back pain is consistent with disc disease.[27] In 2003, Plaintiff attended the Harris County Hospital District for lower back pain and depression, both of which were treated with outpatient medication.[28]  Also in 2003, Plaintiff underwent occupational therapy at the Harris County Hospital District to improve her range of motion; this therapy had no measurable result for Plaintiff.[29]

Plaintiff also exhibited symptoms of depression beginning in April 2001.[30]  In November 2001, David Suchowiecky, M.D., ("Dr. Suchowiecky") attributed this depression to the recent loss of Plaintiff's daughter.[31]  At the time of the evaluation by Dr. Suchowiecky, Plaintiff was sleeping eight hours a night, had good family and spousal support, and regularly completed household

---

[25]    Tr. 101.

[26]    Tr. 217.

[27]    Id.

[28]    Tr. 252-60.

[29]    Tr. 264-70.

[30]    Tr. 246-250.

[31]    Tr. 246-48.

chores.[32]   Plaintiff also attended the Chicano Family Center, a psychotherapy center, but improved little from the center visits.[33] She denied any suicidal ideation.[34]  For her depression, Plaintiff took Paxil (one 20mg pill per day) and Remeron.[35]

A Psychiatric Review Technique Form, prepared by M. Chappuis, Ph.D, ("Dr. Chappuis") in July 2002, reflects that Plaintiff took Paxil only on an "as needed" basis, performed regular housework, shopped for groceries, and attended church weekly.[36]  The report by Dr. Chappuis also states that there were no functional limitations imposed by Plaintiff's depression on her capability to perform work-related tasks.[37]   Dr. Chappuis also stated that Plaintiff's depression might be resultant from her physical problems,[38] an opinion the Report of Contact by Frances Norman corroborates in July 2002.[39]  The Report of Contact further states that, since taking Paxil, Plaintiff no longer felt she was depressed, and she discontinued taking it daily.[40]  Though counseling was recommended

---

[32]    Tr. 246-50.

[33]    Tr. 245-46.

[34]    Tr. 248.

[35]    Tr. 101, 245.

[36]    Tr. 234.

[37]    Tr. 232.

[38]    Tr. 234.

[39]    Tr. 108.

[40]    Id.

for six weeks,[41] Plaintiff stopped attending after only three weeks.[42] In 2002 and 2003, Plaintiff attended the Ripley Clinic at the Harris County Hospital District for her back and depression.[43]   Various treating physicians at the Ripley Clinic recommended Paxil for the depression,[44] and in November 2002, a physician noted that Plaintiff felt the Paxil was working well for her depression.[45]

### 3. Administrative Hearing Testimony

At the administrative hearing conducted on November 25, 2003, Plaintiff, a medical expert ("ME"), and a vocational expert ("VE") testified.[46]   Plaintiff briefly discussed her work history and her impairments.[47]   Plaintiff spoke about both her back pain and her depression.[48]   Plaintiff stated that she could cook but could do no other housework.[49]

After Plaintiff concluded her testimony, the ME, Deborah

---

[41]    Tr. 250.

[42]    Tr. 293-94.

[43]    Tr. 251-62.

[44]    Tr. 252-62.

[45]    Tr. 257.

[46]    Tr. 280-302.

[47]    Tr. 284-94.

[48]    Tr. 289-94.

[49]    Tr. 292-93.

Mullins, Ph.D, ("Dr. Mullins"),[50] testified.[51]  The ME testified that Plaintiff did have depression, which is under listing 12.04,[52] but not of listing level severity.[53]  Further, the ME stated that the depression was treated on an outpatient basis with Paxil, and that the depression seemed fairly stabilized.[54]  The ME also stated that Plaintiff's activities of daily living were affected more by her physical limitations than her mental.[55]  The ME concluded that Plaintiff's concentration, persistence, and pace were unaffected by the depression, and that she had experienced no episodes of decompensation.[56]  In addition, the ME stated there was not enough evidence of depression to evaluate the B or C criteria under listing 12.04.[57]

After the ME concluded, the VE, Susan Rogant, testified.[58]  The

---

[50]    Although the Hearing Transcript references a "Dr. Rollins," the other record evidence, including the curriculum vitae contained in the file, references a Deborah Mullins, Ph.D.  The court assumes the reference to Dr. Rollins in the hearing transcript was in error.  However, it is immaterial to this discussion which of the two doctors was the ME at the hearing.

[51]    Tr. 294-96.

[52]    20 C.F.R., Part 404, Subpart P., Appendix 1, § 12.04.

[53]    Tr. 294-95.

[54]    Tr. 295.

[55]    Id.

[56]    Id.

[57]    Id.

[58]    Tr. 296-300.

VE classified Plaintiff's previous work as medium, unskilled work.[59]

The ALJ gave the VE the following hypothetical:

> Assuming we have an individual that is afflicted with mild to moderate back pain that is noticeable to her at all times, she would be limited to occasionally climbing, stooping, and crouching.  She requires a cane to walk long distances.  She would also require a sit/stand option.  She would be limited to the light exertional level.[60]

The VE stated that the hypothetical individual would not be able to perform Plaintiff's prior work.[61]  The VE then stated that the hypothetical individual should be able to perform light, unskilled work with a sit/stand option.[62]  The VE gave examples of such work (ticket taker, small products assembler, and electronics worker) and stated that ample such jobs existed in the national economy.[63]  Plaintiff's attorney then added the restriction of being illiterate in English, and the VE responded that the general job pool would erode by about twenty-five percent, but the specific jobs the VE listed as possibilities for the hypothetical individual would not be eroded.[64]

## II.  __Legal Standard__

---

[59]    Tr. 296.

[60]    Tr. 296-97.

[61]    Tr. 297.

[62]    Id.

[63]    Id.

[64]    Tr. 298.

**A.   Standard of Review**

This court's review of a final decision by the Commissioner denying disability benefits is limited to two issues: 1) whether proper legal standards were used to evaluate the evidence; and 2) whether substantial record evidence supports the decision. <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002); <u>Brown v. Apfel</u>, 192 F.3d 492, 496 (5th Cir. 1999).

The widely accepted definition of "substantial evidence" is "something more than a scintilla but less than a preponderance." <u>Carey v. Apfel</u>, 230 F.3d 131, 135 (5th Cir. 2000); <u>Brown</u>, 192 F.3d at 496.  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. <u>Brown</u>, 192 F.3d at 496.  The Commissioner is given the responsibility of deciding any conflicts in the evidence. <u>Id.</u>  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."   42 U.S.C. § 405(g).   Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.  <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).   In other words, this court is to defer to the decision of the Commissioner as much as is possible, without making its review meaningless.  <u>Brown</u>, 192 F.3d

at 496.

**B.    Legal Standard to Determine Disability**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act.  Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).  The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such disability must be demonstrated by "medically acceptable clinical and laboratory diagnostic findings."  42 U.S.C. §§ 423(d)(3), (d)(5); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is disabled under this standard, Social Security Act regulations ("regulations") provide that a disability claim should be evaluated according to a five-step sequential process:

> (1) A claimant who is working, engaging in a substantial gainful activity, will not be found disabled no matter what the medical findings are;
>
> (2) a claimant will not be found to be disabled unless he has a "severe impairment";
>
> (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider

vocational factors;

(4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

(5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity [("RFC")] must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994), see also 20 C.F.R. § 404.1520.

To be entitled to benefits, a claimant bears the burden of proving she is disabled within the meaning of the Act. Wren, 925 F.2d at 125. By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears it on the fifth. Brown, 192 F.3d at 498; Greenspan, 38 F.3d at 236. The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled. Greenspan, 38 F.3d at 236.

### III. **Analysis**

The ALJ found that Plaintiff had not engaged in any substantial gainful activity since the alleged onset date.[65] The ALJ also found that Plaintiff had "degenerative disc disease of the lumbar spine and depression."[66] The ALJ went on the say that "[t]hese are 'severe' impairments within the meaning of the Act."[67] According to

---

[65]   Tr. 18.

[66]   Tr. 16.

[67]   Id.

the ALJ's findings, these impairments, alone and in combination, did not meet the listing criteria.[68]  Moreover, the ALJ found that the depression was being treated with medication and did not rise to listing level severity.[69]   The ALJ took special note of Dr. Chappuis's finding on the Psychiatric Review Technique Form that Plaintiff's depression was non-severe.[70]  The ALJ found Plaintiff's pain not disabling.[71]  The ALJ also found that the Plaintiff was not able to perform her previous jobs given her limitations.[72]  The ALJ used the Medical-Vocational Guidelines[73] ("grids") as a framework and starting place to support a finding of not disabled.[74]  The ALJ then incorporated the medical records, testimony, and record evidence into an RFC analysis that elucidated the following functional limitations imposed on Plaintiff:

> (1) she could perform light work, (2) with only occasional climbing, stooping and crouching (3) she should not be required to walk long distances (4) and it should have and [sic] option to sit or stand (5) claimant should not need to speak English to work at the job.[75]

Though not able to perform her prior work, Plaintiff was found able

---

[68]   Tr. 16-19.

[69]   Id.

[70]   Tr. 16.

[71]   Tr. 18-19.

[72]   Id.

[73]   20 C.F.R., Part 404, Subpart P, Appendix 2.

[74]   Tr. 18.

[75]   Tr. 17-19.

13

to perform light unskilled work with the above limitations.[76]  Based on the VE testimony, the ALJ found that light unskilled jobs were readily available in significant numbers in the national economy.[77] After the ALJ reviewed all relevant factors[78] and evidence, the ALJ found Plaintiff not disabled.[79]

In her motion for summary judgment, Plaintiff sets forth two arguments specifying why the ALJ committed reversible error in his decision.[80]  First, Plaintiff contends the ALJ erred by failing to evaluate the severity and functional limitations of Plaintiff's "severe" impairments by not considering the functional impact and limits of her mental impairment (depression).  Second, Plaintiff contends the ALJ failed to give a complete hypothetical to the VE as the hypothetical did not include Plaintiff's depression; and, therefore, the ALJ's reliance on the VE's testimony as support for the ALJ's ultimate finding of "not disabled" was also in error. Defendant contends that the medical evidence, ME testimony, and other evidence in the record does not reflect any limitations resulting from depression, and so the "error" by the ALJ did not

---

[76]     Tr. 18-19.

[77]     Id.

[78]     Tr. 17-19.

[79]     Tr. 18-19.

[80]     See Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 12.

prejudice Plaintiff's claim.[81]   Defendant therefore maintains the ALJ's decision should stand.   The court will consider all arguments in turn.

## A.   Plaintiff's First Argument

Plaintiff's first contention is that the ALJ erred by failing to evaluate the severity and functional limitations of all the Plaintiff's "severe" impairments by not considering the functional impact and limits of her depression.[82]   In essence, Plaintiff contends that the proper legal standards were not followed because the ALJ did not consider, with required scrutiny, Plaintiff's depression and its resulting functional limitations.   This court finds Plaintiff's first contention without merit.

The ALJ classified Plaintiff's depression as an independent "severe" impairment.[83]   However, the ALJ, supported by ME testimony and medical evidence, classified the depression as not reaching listing levels.[84]   The ALJ has a duty to develop the facts fully and fairly, relating to an applicant's claim for disability benefits. Boyd v. Apfel, 239 F.3d 698, 708 (5th Cir. 2001).   If the ALJ does satisfy this duty, then his decision is justified.   Id.   When an

---

[81]     See Defendant's Memorandum in Support of Motion for Summary Judgment and in Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 14.

[82]     Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 12.

[83]     Tr. 16.

[84]     Id.

impairment is "severe" and not of listing level, an ALJ is required to perform a RFC assessment of Plaintiff's impairment to determine the limitations it imposes on Plaintiff's capacity to perform job tasks.  <u>See</u> 20 C.F.R. § 404.1520a(d)(3).  The RFC should incorporate medical history, laboratory findings, and functional limitations. <u>See</u> 20 C.F.R. § 404.1520a(e)(2).  The functional limitations used in both the determination of severity and RFC are the following: restriction of activities of daily living, difficulties in maintaining social function, difficulties in maintaining concentration, persistence, or pace, and episodes of decompensation. <u>See</u> 20 C.F.R. § 404.1520a(c)(3).

In the present case the ALJ satisfied his duty to develop the record fully.  The ALJ considered Plaintiff's medical history and ME testimony in assessing Plaintiff's RFC.[85]  Included in the medical and testimony record is a plethora of evidence concerning Plaintiff's depression, specifically, the medical records from The Suchowiecky Center, the psychiatric evaluation by Dr. Chappuis, and the hearing testimony by Dr. Mullins.  The medical records from the Suchowiecky Center illustrate that Plaintiff had depression, but also had good familial and spousal support.  Further, this report states that Plaintiff did the household chores on a regular basis. The Psychiatric Review Technique Form completed by Dr. Chappuis reveals that Plaintiff's depression caused ***no*** functional

---

[85]    Tr. 16-17.

limitations.

Moreover, because Plaintiff's medication adequately treated her impairment, the impairment cannot serve as a basis for a finding of disability.  See e.g. Johnson, 864 F.2d at 348.  The report by Dr. Chappuis threw into sharp relief the fact that Plaintiff's medication for her depression (Paxil) worked extremely well; so well in fact, that Plaintiff only took Paxil on an "as needed" basis. The ME, stated in his hearing testimony that Plaintiff had been treated for depression on an outpatient basis with Paxil.  In addition, the ME stated that Paxil adequately stabilized Plaintiff's depression.  The ME found no functional limitations in the areas of concentration, persistence, or pace or episodes of decompensation. The ME stated that the record was too weak to find evidence of either B or C criteria under listing 12.04.

This evidence points to one conclusion, the conclusion the ALJ correctly reached, that Plaintiff's depression did not impose limitations on her capacity to work.  Furthermore, Plaintiff's specific functional limitations were considered, as is required by 20 C.F.R. § 404.1520a.  No doctor has found that the Plaintiff's depression would impose any functional limitations on Plaintiff, and the ME and Dr. Chappuis, both specifically dispelled any such notion.

Plaintiff cites Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996), as evidence that the ALJ did not do

that which is required in order to examine limitations predicated on Plaintiff's depression.[86]   SSR sections can be persuasive in this circuit.   <u>Myers v. Apfel</u>, 238 F.3d 617, 620 (5th Cir. 2001). Specifically, Plaintiff contends the ALJ did not consider the functional limitations of Plaintiff's depression using the methods contained in SSR 96-8p.

SSR 96-8p states that when an ALJ performs an RFC, he must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545." SSR 96-8p, 1996 WL 374184 (S.S.A.) at *1.  The cited 20 C.F.R. § 404.1545(c) states, in turn, that for assessing mental abilities, the ALJ should "first assess the nature and extent of [claimant's] mental limitation and restriction and then determine [the RFC] for work activity on a regular and continuing basis."  Furthermore, the C.F.R. states what type of evidence will be considered in the RFC assessments, including medical records, informal or formal medical opinions, and other record evidence.  <u>See</u> C.F.R. 20 § 404.1545(a)(3).


The ALJ's extensive consideration and use of all medical evidence, especially that from Dr. Chappuis and the ME, and other

---

[86]     Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 12.

medical opinions available in questionnaires, undermines Plaintiff's contention.   Both Dr. Chappuis and the ME stated that Plaintiff's depression imposed no functional limitations on Plaintiff's capacity to work.   Accordingly, the ALJ found Plaintiff limited only by physical restrictions.[87]   The functional restrictions found by the ALJ reflect the opinions of both doctors that Plaintiff's depression imposed no limitations on her capacity to perform job tasks.   Ergo, SSR 96-8p was met by the ALJ because he used acceptable types evidence and found no limitations imposed by Plaintiff's depression, and thus no further inquiry was required by SSR 96-8p.

Plaintiff also cites SSR 85-15, 1985 WL 56857, (S.S.A. 1985), as evidence that the ALJ did not do that which was required in order to examine limitations predicated on Plaintiff's depression.[88] Quoting SSR 85-15, Plaintiff contends that the ALJ failed to examine Plaintiff's ability to carry out the "basic mental demands of competitive, remunerative unskilled work."[89]  See SSR 85-15, 1985 WL 56857, at *4.  Unfortunately for Plaintiff, SSR 85-15 deals with the rules associated with "evaluating *solely nonexertional* impairments" (emphasis added) as the title to the SSR elucidates.[90]   SSR 85-15

---

[87]     Tr. 17-18.

[88]     Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 12, p. 6.

[89]     Id.

[90]     SSR 85-15, "Titles II and XVI: Capability To Do Other Work-The Medical-Vocational Rules as a Framework for Evaluating *Solely Nonexertional* Impairments" (emphasis added).

19

goes on to state, inescapably, that "[w]here a person's exertional capacity is compromised by a nonexertional impairment(s), see SSR 83-14." SSR 85-15, 1985 WL 56857, at *3. Therefore, the applicable SSR in this case is 83-14, an analysis of which illustrates that the ALJ adhered to the accepted practices embodied therein. See SSR 83-14, 1983 WL 31254 (S.S.A. 1983).

SSR 83-14 specifies that where a person cannot be found disabled based on exertional limitations alone, the grids will be a starting point, to which other evidence and vocational testimony can be added, to determine limitations and disability. See SSR 83-14, 1983 WL 31254, at *3-4. As the ALJ's findings demonstrate, the ALJ began with the grids as a framework and starting point of his analysis, to which he added other evidence to support a finding of "not disabled." Therefore, the ALJ did not err by failing to follow SSR 85-15, but, in fact, followed the appropriate procedures contained in SSR 83-14.

The ALJ qualified Plaintiff's depression as "severe," and, so, performed a RFC analysis on the impairment. The ALJ's RFC analysis found that this impairment did not restrict Plaintiff's work capability - a finding supported by copious evidence in the record. The ALJ followed proper legal standards when analyzing the limitations created by Plaintiff's depression. The medical evidence and hearing testimony unequivocally demonstrate that Plaintiff's depression did not limit her work capabilities. Moreover,

Plaintiff's Paxil more than amply treated her depression, and so this impairment was not disabling at the time of the hearing. The ALJ adopted these findings, and therefore depression is not included in the list of work restrictions.[91]  The ALJ met his duty to develop the record, and did not err in his analysis of the Plaintiff's depression. Thus, the proper legal standards were applied in the evaluation of Plaintiff's depression. The ALJ acted in accordance with 20 C.F.R. § 404.1520a, SSR 96-8p, SSR 83-14, and precedent case law. As such, the Commissioner carried her burden of demonstrating that Plaintiff was not disabled under the meaning of the Act.

**B.    Plaintiff's Second Argument**

Plaintiff next contends the ALJ failed to give a complete hypothetical to the VE since the hypothetical did not include Plaintiff's depression, and the ALJ's reliance on the VE's testimony as support for the ALJ's ultimate finding of "not disabled" was also in error. The ALJ is only required to include in the hypothetical given to the VE that which the ALJ reasonably believes restricts Plaintiff's capability to work. See Boyd, 239 F.3d 698. Therefore, this court also finds Plaintiff's second argument without merit.

As part of the ALJ's duty to fully develop the record, he is required to pose a comprehensive hypothetical to the VE before he can rely on that hypothetical. Boyd, 239 F.3d at 708. The ALJ may

---

[91]    Tr. 17.

properly rely on the testimony of a VE in determining restrictions on capability to work if the hypothetical given to the VE incorporates reasonably all disabilities recognized by the ALJ, and the claimant is afforded the opportunity to correct deficiencies in the ALJ's question.  Boyd, 239 F.3d at 706-07.  The hypothetical must take into account all the restrictions reasonably warranted by the evidence.  Dominque v. Barnhart, 388 F.3d 462 (5th Cir. 2004), cert. denied, ___ U.S. ___, 125 S.Ct 1667 (2005).  If the hypothetical meets the above criteria, then the ALJ may justifiably rely on the VE testimony to determine the Plaintiff's limitations on work and job availability.  Masterson v. Barnhart, 309 F.3d 267, 273 (5th Cir. 2002).  Assuming an ALJ erred by not including a limitation based on depression in the hypothetical, the court can not reverse the decision of the ALJ on the grounds that the ALJ did not fully develop the record unless Plaintiff can show she was prejudiced by the error.  Carey, 230 F.3d at 142.  To prove prejudice, Plaintiff must show that she "could and would have adduced evidence that might have altered the result."  Id. (quoting Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984)).


In the present case, the ALJ adhered to the criteria governing the validity of hypotheticals.  The ALJ included in his hypothetical all the disabilities and restrictions reasonably warranted by the

evidence.  As stated above, there exists ample medical evidence and testimony to demonstrate that Plaintiff suffered no restrictions as a result of her depression.  Thus, when the ALJ only presented the restriction resulting from Plaintiff's back problem, the ALJ did not err, because the back injury was the only impairment that the evidence demonstrated as restricting.  Because the ALJ fulfilled his duty to fully develop the record, no error occurred.

Assuming arguendo that an error had occurred, this court would still not reverse.  When the VE testified at the hearing, Plaintiff was given a chance to correct any deficiencies in the hypothetical.  Such a hypothetical will support a finding of not disabled, unless Plaintiff can prove the error prejudiced her claim.  See Carey, 230 F.3d at 142.  This is not the case.  Plaintiff made no proffer of evidence to prove that she could and would have adduced evidence that might have altered the result.  Moreover, it is telling that Plaintiff's counsel did correct the hypothetical given the VE to add illiteracy in English, but failed to include any mention of depression.

Thus, the hypothetical to the VE included all restrictions reasonably warranted by the evidence, and Plaintiff's counsel did not utilize his opportunity to "correct" the hypothetical.  The hypothetical presented to the VE by the ALJ was therefore valid, as was the ALJ's reliance in determining the working restrictions of Plaintiff, and, ultimately, his finding that Plaintiff was not

23

disabled.   Assuming, theoretically, the ALJ did err, Plaintiff has proffered no evidence that any such error prejudiced her claim.   As such, the proper legal standards were followed by the ALJ, and the hypothetical answered by the VE adds to the body of substantial evidence upon which the ALJ validly relied.

**C.    Defendant's Motion for Summary Judgment**

Defendant's motion asserts that the ALJ's decision should be affirmed because it properly determined Plaintiff was never disabled by using proper legal standards and supported by substantial evidence.   Defendant met its burden at step five of the sequential analysis of proving Plaintiff was able to perform a job that existed in significant numbers in the national economy.   The ALJ properly examined Plaintiff's depression and found it not to impose any limitations upon Plaintiff's capability to perform work-related tasks.   Furthermore, the ALJ rightly excluded Plaintiff's depression from the hypothetical given to the VE, as the medical evidence and testimony showed that the depression did not restrict Plaintiff's work-related capabilities.   Moreover, the record reflects that Plaintiff could perform chores, attend church, and drive occasionally; all of which is substantial evidence to support the ALJ's finding of not disabled.

Thus, this court agrees with Defendant that the ALJ's decision that Plaintiff was not disabled is supported by substantial record evidence.   In addition, this court also agrees with Defendant and

finds that the ALJ applied proper legal standards in evaluating the evidence and in making its decision.

## IV.   Conclusion

Based on the foregoing reasons, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

SIGNED in Houston, Texas, this 27th day of June, 2005.


_____
Nancy K. Johnson
United States Magistrate Judge

25